## CHARLES E. BRESLER v. JACOB DARMSTAETTER.

*Lease—Construction—Time of surrender.*

A lease for a term of years stipulated that *after* the term had elapsed either party might notify the other of the selection of an appraiser to make a valuation of the property, and if the other did not select another appraiser within thirty days he might do it himself, and the appraiser so chosen might make a valuation of the property which the lessor must pay on surrender of the premises and buildings, within thirty days after such surrender, the amount of the valuation to be a lien on the premises until paid. *Held,* that the lessee is not entitled to remain in possession while the appraisal is in progress.

Error to Wayne. (Speed, J.) June 4.—June 10.

Proceedings to recover possession. Defendant brings error. Affirmed.

*S. S. Babcock* for appellant. If there is any doubt as to the intent of the parties, or as to the construction of the lease, the tenant is entitled to the benefit of every doubt, and the construction of every doubtful clause must be in his favor :: 4 Kent's Com. 132 ; much more will this doctrine hold true, where the penalty for unlawful holding over is highly penal :. *K lingle v. Ritter* 54 Ill. 140; in *Hopkins v. Gilman* 47 Wis. 581, where a lease contained similar provisions to the one at bar, the provisions in question being set up in full in 22. Wis. 477, the tenant had held over on failure of lessor to pay value for ten years, and the court held that it was a holding over under the old agreement and that the landlord could not recover any greater rent than that provided in the lease, because he could, by payment of the appraised value, have terminated the tenancy at once.

*D. C. Holbrook* for appellant, cited *Whitlock v. Duffield* Edw. (N. Y) 366.

CAMPBELL, J.   This was a proceeding to recover possession of premises held over after the alleged termination of a term.

The lease was made by plaintiff to defendant's assignor, June 1, 1875, to run until January 1, 1880. It was provided that if plaintiff should not, six months before the latter period, give notice of his desire to terminate the lease, it should be extended for another period of five years, upon an appraisal and certain named conditions. This notice was not given, and the lease, therefore, ran without controversy until January 1, 1885. Provision was then made for similar extensions in the same way.

Notice was given by plaintiff to terminate the lease more than six months before January 1, 1885. The only question on the record is whether defendant was bound to give up possession at the end of the second term, in the beginning of January, 1885, or whether he could retain it until the appraisal proceedings were completed, which were to be had after this period ended.

The clause in the lease under which the doubt arises is as follows :

"If said party of the first part shall so give six months' notice of his desire to terminate this lease, at the expiration of any term of years, then either party may give to the other, after such term has elapsed, a like notice, that he or they have selected a disinterested person to act for him, to appraise and value at cash price any building or buildings the parties of the second part shall hereafter erect on and remaining on said premises; and the other party shall, within thirty days, appoint a like disinterested person to act for him in making said valuation. And the party first giving such notice may appoint the second person, if the other neglect for thirty days so to appoint, and the two so appointed may agree on such valuation, or they may select a third disinterested person, and then the valuation that any two shall agree upon and fix in writing shall be the cash valuation of said buildings and improvements. And the said party of the first part hereby agrees to pay such cash valuation, on surrender and delivery to him of said premises and buildings, as they were appraised, within thirty days after such appraisal and surrender, and until so paid the amount of said valuation shall be a lien and incumbrance on said premises, and may be enforced the same as a mortgage therefor thereon ; but any rent, taxes and assessments shall be first deducted and allowed in such valuation."

There is some obscurity in this language, but, when construed in connection with the entire lease, it is not difficult to ascertain the legal meaning. The term granted is, in the first place, until January 1, 1880, and the extension until five years thereafter. These periods being definite and fixed, no repugnance should be held to exist so as to change them, unless clearly required. And no reason seems to exist for any. If the defendant were assured a possession until the amount appraised should be paid, so that his possession should be a security to him, there would be force in urging that construction. But there is no doubt at all, under his own claim, that he is bound to surrender possession before payment. This being so, there is no more reason for his retention during the period of appraisal than at any other time.

Defendant's counsel cited one case, and only one, in which this distinct question was decided apparently in his favor. That case is *Van Rensselaer's Heirs v. Penniman* 6 Wend.

569. The other cases cited do not come strictly in point. In that case there was no definite period of time named in the lease. It ran for three lives named, absolutely, at a given rent, but it did not provide for surrender at their termination. But it provided that if, after the termination of those lives, the heirs or other owners, "should choose to remove or dispossess" the lessees, they should pay an appraised price for the improvements, and on payment of this value the lessees should give up possession. Under this lease this option was not required to be exercised at any particular time at or after the three lives ended, and the purpose was to create thereafter a tenancy at will, to terminate on payment of the value of improvements, no other time being named at all. The court held, as we think correctly, that the right of possession terminated with payment, and not before. But in *Tallman v. Coffin* 4 N. Y. 134, under a lease like this for a definite period, it was held that the term ended and the right of possession accrued to the landlord at the day specified, although in that case the agreement was to surrender on payment, while here the agreement is express that payment is not to be made until thirty days after surrender.

The lease gives perfect security to the lessee, because he has a lien on land and improvements both, for the value of improvements, which is to be enforced by foreclosure. He can lose nothing by the surrender, and he cannot claim to be paid until he surrenders, and until the thirty days thereafter shall be expiring. The court below was right in so holding, and the judgment must be

Affirmed.

The other Justices concurred.